## Holmes Estate

*Butler, Beatty, Greer and Johnson* and *John G. Kaufman,* for petitioner.

VAN RODEN, P. J., January 25, 1949.—This is a petition to terminate a trust created under the will of Edward C. Holmes, who died September 16, 1891. By the terms of said will, which was dated November 30, 1886, and duly probated after decedent's death, testator devised an undivided 3/8ths interest in premises no. 322 Market Street, Philadelphia, in trust "for the benefit and advantage of my daughter Margaretta Holmes, for and during the term of her natural life, the same not to be in any way liable or subject to the debts, contracts or engagements of any future husband of my said daughter, but the same to be for her sole and separate use". Testator conferred upon his said daughter the power to dispose of the principal by will, and in default of appointment gave the remainder to

"such person or persons as would be legally entitled thereto under the Intestate laws of the Commonwealth of Pennsylvania as they shall exist at the time of my decease had my said daughter died seized of said premises in fee simple".

At the time of the execution of decedent's will, the daughter was eight years old. At the time of his death, she was 13 years of age. In 1917, she married V. Gilpin Robinson, who died on March 27, 1942. The daughter, who has not remarried and has no issue, is the sole lineal descendant of testator.

The court has been requested to terminate the trust on the ground that the original purpose of the trust has failed and there is no longer any valid reason for continuing it. It is obvious that the trust fund, which now amounts to $7,900.57, is incapable of producing sufficient income to provide the beneficiary with even the bare necessities of life. Accordingly, if the sole purpose of testator in creating the trust had been to provide income for his daughter, the trust has obviously failed of its purpose.

Section 336 of A. L. I. Restatement of the Law of Trusts provides that:

"If owing to circumstances not known to the settlor and not anticipated by him the continuance of the trust would defeat or substantially impair the accomplishment of the purposes of the trust, the court will direct or permit the termination of the trust."

While this section of the Restatement has not yet met with the express approval of the appellate courts of this Commonwealth, the tendency of the lower courts has been in conformity therewith: Auchu's Estate, 38 D. & C. 33 (1940); Posey's Estate, 52 D. & C. 127 (1944); Barnsley's Estate, 59 D. & C. 653 (1947); Leonard's Estate, 60 D. & C. 42 (1947); Courtright's Estate, 48 Lack. Jur. 73 (1946).

The legislature has attempted to solve this problem in the Estates Act of April 24, 1947, P. L. 100, sec. 2, 20 PS §301.2, but such legislation is applicable only to trusts created after January 1, 1948. With respect to trusts created prior thereto, the extent of the power of the courts to decree determination on the ground of failure of adequate income has not been clearly defined. See Lefever, Termination of Trusts in Pennsylvania, 96 Pa. Law Rev. 305.

The Supreme Court of Pennsylvania has held that if all the parties who are or may be beneficially interested in a trust are in existence and sui juris, if there is no ultimate purpose of any kind requiring the continuance of the trust and if all the beneficiaries consent, the trust may be terminated: Bowers' Trust Estate, 346 Pa. 85 (1943). But where, as in this case, the creator of the trust is no longer living and therefore incapable of consenting, even the consent of all the beneficiaries is insufficient to warrant termination if the purpose of the trust has not been fully accomplished: Id.

It is, therefore, necessary to scrutinize closely the provisions of testator's will to determine whether any of his purposes in creating the trust remain capable of accomplishment. It has already been noted that the trust is insufficient with respect to providing adequate income for the beneficiary. With respect to the "sole and separate use" feature of the trust, it is readily apparent that such purpose has likewise failed.

It may well be that the sole and separate use aspect of this trust was invalid ab initio, for it has been held that a sole and separate use trust cannot be created for a woman unless she is married or in immediate contemplation of marriage: Benefactor B. & L. Assn. v. Latta, 106 Pa. Superior Ct. 156, 160 (1932). Since the beneficiary was but eight years of age at the time the will was written and 13 years of age when the will

became effective, it is extremely unlikely that her marriage to Mr. Robinson more than a quarter of a century later was then in contemplation. It is certain that such contemplation, even if existent, was far from imminent. Even if the sole and separate use trust had been effective with respect to the marriage with Mr. Robinson, it is very clear that his death in 1942 caused the trust to fall, as the statute executed the use upon discoverture: Carman v. Bumpus, 244 Pa. 136 (1914). Even if the widow should remarry, the sole and separate use will not revive for her protection: Quin's Estate, 144 Pa. 444 (1891).

The failure of the sole and separate use feature will not in itself invalidate the trust where there are other valid purposes which remain capable of accomplishment: Ingersoll's Appeal, 86 Pa. 240 (1878). In the instant case, however, there is no other apparent purpose of the trust, as there are no spendthrift features, no special duties are placed upon the trustee other than to act as a conduit for the transmittal of income to the beneficiary and there are no limitations upon the beneficiary's right of full enjoyment, at least during her lifetime. A bequest in trust without limitations or duties is a dry or passive trust which is executed by the statute of uses: Lowitz Estate, 360 Pa. 91, 93 (1948).

This leads to the question whether petitioner is entitled merely to a legal life estate or whether she may properly claim the entire trust fund absolutely. Where an estate for life only is given, followed by a general power of appointment, and on failure to appoint, to children or to special heirs, the power to appoint will not enlarge the estate of the cestui que trust to a fee, and on a failure to appoint, the children or special donees in remainder take by purchase from the donor, and not by way of limitation as heirs of the cestui que trust; but a limitation to heirs on a failure to

appoint, unquestionably enlarges a life estate to a fee by the union of estates: Dodson v. Ball, 60 Pa. 492, 497 (1869); Thorne's Estate, 344 Pa. 503, 517 (1942).

In Dodson v. Ball, supra, plaintiff, a single woman, without marriage in view, conveyed all her real estate in trust for her sole and separate use for the term of her natural life, with power to appoint the remainder by will and in default of appointment "to such person or persons as would be entitled to the same if the said Harriet S. Ball had died intestate". Plaintiff subsequently married and after the death of her husband filed a bill in equity praying for the termination of the trust. The decree of the lower court dismissing the bill was reversed by the Supreme Court, and it was held that a life estate coupled with a general power of appointment with a gift over in default of appointment to the heirs of the life beneficiary was tantamount to a fee simple. A similar result was reached in Yarnall's Appeal, 70 Pa. 335 (1872).

In Williams' Appeal, 83 Pa. 377 (1877), the court also terminated a sole and separate use trust, after discoverture, where the life tenant also had a general power of appointment followed by a gift in default of appointment to such person or persons as would take "agreeably to the then existing intestate laws of the state of Pennsylvania". This language differs from the language in the instant case only in that the determination of heirs was in that case in accordance with the intestate laws in force at the time of death of life tenant, whereas in the instant case testator provided that the determination of heirs should be covered by the intestate laws existing at the time of his own decease. It is not apparent that this slight difference in phraseology creates any legal distinction of importance here. A similar question arose in Tucker's Appeal, 75 Pa. 354 (1874) where the gift in

default of appointment was to such person or persons as would be entitled under the intestate laws of the place where the life beneficiary "may be domiciled at the time of her death". The Supreme Court held that this slight difference between such phraseology and that in the case of Dodson v. Ball, supra, was not such as should change the result.

Turning to the equities of the case, we find a situation where testator's daughter, who was obviously his chief concern when he created the trust and whom he intended to be the principal object of his bounty, is unable to live comfortably or even decently upon the income of the trust. Since she is a widow of advanced years, without issue and with the likelihood of future issue being practically (although perhaps not legally) extinct, and since there are no other lineal descendants of testator to inherit this property, the principal will go to remote collateral relatives unless the trust is terminated. It is inconceivable that testator would prefer that his daughter starve in order that remote collateral relatives may later feast. In the opinion of the court, both legal precedents and the equities of the case require the termination of this trust.

Accordingly, the court enters the following

### Decree

And now, to wit, February 25, 1949, a petition having been presented by Margaretta Holmes Robinson praying for the termination of the trust created for the said Margaretta Holmes Robinson by the last will and testament of Edward C. Holmes, deceased, dated November 30, 1886, and oral argument and written briefs having been submitted to the court in support of the said petition, and after due consideration thereof the court being of the opinion that the trust may properly be terminated, it is hereby ordered, adjudged and decreed as follows:

1. The prayer of the petition is hereby granted.

2. The trust created for petitioner, Margaretta Holmes Robinson, by the last will and testament of Edward C. Holmes, deceased, dated November 30, 1886, is hereby terminated.

3. It is hereby declared that the said Margaretta Holmes Robinson is entitled to receive the entire balance of principal and undistributed income of the said trust fund absolutely.

4. Upon the transfer of said balance of principal and income unto the said Margaretta Holmes Robinson individually, the estate of the deceased succeeding trustee and his sureties are discharged from all further liability in connection with the said trust.